UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

RALPH STEWART,

                              *Plaintiff,*

        v.

                                                          Case No. _____

JOHNSON COUNTY, TENNESSEE,

                              *Defendant.*

## COMPLAINT

### Introduction

1.      The Defendant, Johnson County, Tennessee ("Johnson County" or "Defendant"),
has sought to promote Christianity through the use of public displays at the Johnson County
Courthouse ("Courthouse"). After purporting to create a public forum in the Courthouse for
historical displays, Defendant approved a display that included the text of the Ten
Commandments as well as a statement that "the United States of America was founded on
Christian principles." Yet Defendant refused to permit the posting of Plaintiff's display, which
featured quotes from seminal sources of American legal history about the importance of
separating church and state. Moreover, Defendant's asserted rationale—that Plaintiff's
history-grounded display was insufficiently "historical"—thinly disguises the County's true
motivation and the effects of its actions: to decorate the Courthouse with displays that promote

Christianity, and to exclude displays that promote the separation of church and state.

2. On or about August 14, 1999, Johnson County erected a solitary plaque ("Ten Commandments plaque"), containing the text of the Ten Commandments, in the Johnson County Courthouse in Mountain City, Tennessee. (Ex. 1.)

3. After receiving complaints about the Ten Commandments plaque, Defendant did not remove it. Instead, Defendant adopted a Policy Governing Placement of Displays in the Lobby of the Johnson County Courthouse ("Policy"), which purported to create a "limited public forum" for displays that "directly relate to the development of law, the universally-valued principle of equal justice under the law, the history and heritage of the law of Johnson County, State of Tennessee, or the United States, and/or the specific function of the Courthouse itself." (Ex. 2, § II, ¶ A.)

4. After adopting the Policy, Defendant removed the Ten Commandments plaque from the Courthouse and approved the placement of a new display. The new display ("Second Ten Commandments display")—co-sponsored by a group called the Ten Commandments Warriors—contained the original Ten Commandments plaque, as well additional plaques with quotations from the U.S. Constitution, the Declaration of Independence, U.S. Supreme Court cases, and other law-related historical sources. (Ex. 3.)

5. Pursuant to the Policy, Plaintiff Ralph Stewart, who served five years in the Marines as a commissioned reserve officer, subsequently submitted a written proposal to display two framed posters, entitled "On the Legal Heritage of the Separation of Church and State" and "The Ten Commandments Are Not the Foundation of American Law." (Ex. 4 at 4–5.) These displays consisted of quotations from the U.S. Constitution, the Declaration of Independence,

2

U.S. Supreme Court cases, and other law-related historical sources. Although Defendant denied Mr. Stewart's request on the ground that the posters did not fall within the subject-matter of the public forum created by the Policy, *see* Ex. 2, § II, ¶ A, Mr. Stewart's display covers the same subject-matter—and quotes from many of the same sources—as does the Second Ten Commandments display. The only material difference is the viewpoint expressed.

      6.     The Johnson County Commission is promoting religion through its displays. In addition, the Commission refuses to allow alternative points of view to be heard. This is a twofold violation of the First Amendment.

<b>Jurisdiction and Venue</b>

      7.     The Court has jurisdiction over Plaintiff's federal causes of action, arising under the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 28 U.S.C. §§ 1331, 1343.

      8.     The Court has supplemental jurisdiction over Plaintiff's state-law cause of action, arising under the Constitution of the State of Tennessee, pursuant to 28 U.S.C. § 1367.

      9.     The Court is authorized to grant declaratory relief by the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

      10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

3

**Parties**

11.     Plaintiff Ralph Stewart is a citizen and resident of Johnson County, Tennessee.

Mr. Stewart visits the Johnson County Courthouse to attend meetings of the Johnson County

Commission ("Commission") and to conduct other routine business, such as the renewal of

motor vehicle registrations and the payment of property taxes; while there, he observes the

Second Ten Commandments display.   In addition, Johnson County has denied Mr. Stewart's

request to display two posters, entitled "On the Legal Heritage of the Separation of Church and

State" and "The Ten Commandments Are Not the Foundation of American Law," in the Johnson

County Courthouse.

12.     Defendant Johnson County, Tennessee is a municipal corporation in the State of

Tennessee and is subject to the jurisdiction and venue of this Court.   *See* Tenn. Code

Ann. § 5-1-103 (2010).   Under Tennessee law, "[s]uits may be maintained against a County for

any just claim, as against other corporations."   Tenn. Code Ann. § 5-1-105 (2010).

13.     Defendant exercises its power as a County through its elected Board of

Commissioners.   *See* Tenn. Code Ann. §§ 5-1-103, 5-5-102 (2010).

**Background**

<u>The First Ten Commandments Display</u>

14.     From 1999 until 2008, Johnson County hung a single plaque with the numbered

text of the Ten Commandments in the hallway outside the County Court Clerk's office in the

County Courthouse.   (Exs. 1, 5.)   The top of the plaque bears the words "The Ten

Commandments," just below which is written, "The Historical Foundation of American Law,

Moral Values, and Code of Conduct."   (Ex. 1.)   Beneath these words is a large depiction of an

4

open book containing two banderoles emblazoned with "And God Spoke All these Words" and "Saying, I am the Lord God Thy God," a citation reference to "Exodus 20," and the following text:

I. Thou shalt have no other gods before me.

II. Thou shalt not make unto thee any graven images.

III. Thou shalt not take the name of the Lord in vain.

IV. Remember the Sabbath day to keep it holy.

V. Honor thy father and mother.

VI. Thou shalt not kill.

VII. Thou shalt not commit adultery.

VIII. Thou shalt not steal.

IX. Thou shalt not bear false witness.

X. Thou shalt not covet.

(*Id.*) The bottom of the plaque reads, "Presented by Citizens of Johnson County on the 14th Day of August, 1999." (*Id.*)

15. On August 28, 2008, Mr. Stewart's counsel wrote to Defendant to take issue with this Ten Commandments plaque. The letter stated that the plaque violated the Establishment Clause of the First Amendment to the U.S. Constitution and requested that Defendant remove the plaque or transfer it to private property.

<u>Defendant Enacts A Public-Forum Policy</u>

16. On September 18, 2008, the Commission held a meeting at which County Mayor Dick Grayson announced that a local citizen had complained about the Ten Commandments

5

plaque. Mayor Grayson claimed that litigation was pending and that Johnson County had until October 2008 to address the matter. The Commission, however, took no formal action on the matter at this meeting.

17.     At its meeting of October 16, 2008, the Commission considered a motion to approve a Policy creating a public forum within the County Courthouse.

18.     The minutes of the October meeting indicate that "an overwhelming number of citizens were present to show their support for keeping the Ten Commandments plaque displayed in the Johnson County Courthouse." (Ex. 6 at 2 (emphasis omitted).)

19.     Reverend Dwayne Dickson, pastor of the First Christian Church in Mountain City, spoke at length about the importance of displaying the Ten Commandments and blamed the removal of the Ten Commandments from public schools for the increase in such societal problems as violent crime, out-of-wedlock births, and divorce. (Ex. 17 at 3.)

20.     Scott Teague, who founded an organization called the Ten Commandments Warriors in response to complaints about the display of the Ten Commandments plaque in the Courthouse, said that his group was "'tired of being pushed around by a bunch of ungodly people.'" *Id.*

21.     At the same meeting, the Commission unanimously approved the new public-forum Policy.

22.     The asserted rationale for the Policy is as follows:

> the Johnson County Commission wishes to acknowledge and commemorate the history and heritage of American law and government in the limited public forum that is the walls of the lobby of the Johnson County Courthouse; and . . .

6

the County also deems it of educational value to display historical documents that represent the development of law, the universally-valued principle of equal justice under the law, and the specific function of the Courthouse; and . . .

[the] County has historically allowed for citizens and citizen groups to place displays relating to [the] history and heritage of American law and government on the walls in the lobby of the Johnson County Courthouse . . . .

(Ex. 2 at 1.)

23.     The Policy establishes a process for the placement of displays in the Courthouse

lobby.  (*Id.* § I.)  Written requests for placement must be submitted to the Commission at one of

its regularly scheduled meetings and must include a brief description of the proposed item, its

dimensions, and its proposed location.  (*Id.* § I, ¶¶ A–C.)

24.     The Policy sets forth several criteria that the Commission must consider in

determining whether to accept a display:

The display must directly relate to the development of law, the universally-valued principle of equal justice under the law, the history and heritage of the law of Johnson County, State of Tennessee, or the United States, and/or the specific function of the Courthouse itself.

(*Id.* § II, ¶ A.)  The display also must be donated by a Johnson County citizen, group, or civic

organization and must not create any safety hazards, constitute fighting words, or be obscene or

defamatory.  (*Id.* § II, ¶¶ B–F.)

7

25.     If a display meets the above criteria,

> a place will be set aside for the display in the lobby of the Johnson
> County Courthouse in consideration of the proposed location of the
> item and the aesthetics of the proposed placement, the effect said
> placement will have on the remaining open space on the public
> property, any safety issues, and any other visual or practical effects
> of locating the item on the proposed site.

(*Id.* § III, ¶ A.)

26.     The Policy prohibits the refusal of "the placement of an item because of the

viewpoint of any message communicated by the item."   (*Id.* § III, ¶ B.)   Before the Policy was

approved, however, the Commission Vice Chairman raised questions about this provision,

"citing concerns that it could cause problems later on."   (Ex. 17 at 5).

### The Second Ten Commandments Display

27.     Sometime during the Fall or Winter of 2008, Defendant removed the Ten

Commandments plaque from the Courthouse.

28.     On November 14, 2008, Ten Commandments Warriors founder Scott Teague,

who is also a board member of the Rotary Club of Mountain City ("Rotary Club"), asked to be

placed on the agenda for the November 20, 2008, Commission meeting to present a proposal for

the Second Ten Commandments Display, and he submitted a written request describing his

proposal.

29.     At the November 20, 2008, meeting, Mr. Teague formally presented his proposed

display on behalf of the Rotary Club and the Ten Commandments Warriors.   The Commission

approved the proposal unanimously.

8

30.     The Second Ten Commandments display consists of a pamphlet and eight separate plaques, including the original Ten Commandments plaque that Defendant had previously removed.  The display is located on a wall in the Courthouse lobby.  (Ex. 3.)

31.     At the top of the display is a plaque that bears the words "Liberty," "Life," and "Property."  (*Id.* at 1.)

32.     Just below those words appear three other plaques, in a row.  (*Id.*)  The earlier Ten Commandments plaque appears on the left; the center plaque features an excerpt from the Declaration of Independence and a quotation from Samuel Adams; and the rightmost plaque quotes the preamble to the U.S. Constitution, the Bill of Rights, and a statement of Benjamin Franklin.  (*Id.* at 1–3.)

33.     Centered beneath the row of three plaques is a fifth plaque.  (*Id.* at 1.)  Its text, reproduced in a pamphlet that accompanies the display, states that the display "is to remember and honor the lives of all who came together to establish our great nation" and that "[t]he protection of and provision for Life, Liberty, and Property, along with the ability to live out our beliefs in peace, are the pillars that formed the United States of America." (Ex. 7 at 8.)  The fifth plaque also quotes the statement, from the U.S. Supreme Court's decision in *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984), that "[t]he Constitution [does not] require complete separation of church and state; it affirmatively mandates accommodation, not mere tolerance, of all religions, and forbids hostility to any . . . ."  (Ex. 3 at 2.)

34.     Immediately to the right of the five plaques, and housed in a small, clear bin affixed to the wall, is a 26-page pamphlet entitled "Johnson County Historical Display."  (Ex 7; *see also* Ex. 3 at 4.)  The pamphlet's introduction—entitled "From Biblical Morality to Modern

9

Law"—is written by Dr. Thomas Peake, Pastor of the Mountain City Presbyterian Church, and it states that the Ten Commandments, Declaration of Independence, and U.S. Constitution are displayed together "to underscore their profound connectedness." (Ex. 7 at 3, 4.)

35.     The pamphlet also includes an essay entitled, "The Seven Principles of the Judeo-Christian Ethic," by Reverend Dwayne Dickson, Pastor of First Christian Church in Mountain City. (*Id.* at 9.)   The essay identifies and discusses the following seven principles: (1) the dignity of human life, (2) the traditional monogamous family, (3) a national work ethic, (4) the right to a God-centered education, (5) the Abrahamic Covenant, (6) common decency, and (7) our personal accountability to God. (*Id.* at 9–11.)   Discussion of each of these principles is accompanied by biblical quotations.   For instance, the discussion of "the dignity of human life" includes the quotation, from Genesis 1:27 KJV, that "God created man in his own image, in the image of God created He him; male and female created He them."[1]   (*Id.* at 9.)

36.     The pamphlet concludes with a section devoted to religious quotations from U.S. Presidents and other "Famous Americans," a list of Scripture passages on which U.S. Presidents

---

[1]   The essay also quotes the following Biblical passages: "Marriage should be honored by all, and the marriage bed kept pure, for God will judge the adulterer and all the sexually immoral," Hebrews 13:4; "And, ye fathers, provoke not your children to wrath: but bring them up in the nurture and admonition of the Lord," Ephesians 6:4 KJV; "He hath shewed thee, O man, what is good; and what doth the LORD require of thee, but to do justly, and to love mercy, and to walk humbly with God?" Micah 6:8 KJV; "Jesus replied: 'Love the Lord your God with all your heart and with all your soul and with all your mind.' This is the first and greatest commandment. And the second is like it: 'Love your neighbor as yourself.' All the Law and the Prophets hang on these two commandments," Matthew 22:37–40; "But the LORD shall endure for ever: He hath prepared His throne for judgment. And He shall judge the world in righteousness, He shall minister judgment to the people in uprightness," Psalms 9:7-8 KJV. (Ex. 7 at 9–11.)

took their oath of office, and a statement that "the United States of America was founded on Christian principles . . . ." (*Id.* at 12–15.)

37. Just above the pamphlet, and to the right of the five plaques, are three smaller plaques, each entitled "Johnson County Historical Plaques Dedication." These plaques list several individuals, organizations, businesses, and churches in whose "honor" or "memory" the Second Ten Commandments Display was apparently dedicated. (Ex. 3 at 4.)

### The Dedication Ceremony for the Second Ten Commandments Display

38. A dedication ceremony for the Second Ten Commandments Display was held on August 22, 2009. The ceremony began with a Patriotic Prayer Walk; prayers were delivered at City Hall, the Johnson County School Central office, and local businesses. *See* Paula Walter, *Courthouse Historical Document Display Unveiled at Saturday Ceremony*, The Tomahawk (Mountain City, Tenn.), Aug. 26, 2009, at A-1, A-10.

39. The Republican Women of Johnson County provided decorations for the Courthouse portion of the ceremony. Those decorations included a floral display of seven blue roses, chosen because "'Seven is God's perfect number.'" *Id.*

40. The Courthouse ceremony also included speeches from numerous Christian ministers and two state representatives. *Id.*

41. Reverend Frank Woods opened the ceremony with a prayer and noted that it was the tenth anniversary of the first display of the Ten Commandments at the Courthouse. *Id.*

42. Reverend Dwayne Dickson, Pastor of the First Christian Church in Mountain City, stated that "a shepherd's job is to spot wolves and protect his flock" and that he was proud that Johnson County's citizens stood up for their "'God-given rights.'" *Id.*

11

43.     Dr. Thomas Peake, Pastor of the Mountain City Presbyterian Church, stressed that "'[h]appiness is believing in God.'"  *Id.*

44.     Tennessee State Representative Tony Shipley stated that "God belongs back in government as our nation was founded on the basis of godly conduct."  *Id.*

45.     State Representative Jason Mumpower directed listeners to "rededicate themselves in their hearts and minds everyday to God," stated that "'God loves us all, even those who don't believe,'" and encouraged audience members to "pray for the individual who wanted the Ten Commandments removed from the Johnson County Courthouse."  *Id.*

46.     Scott Teague, whose organization, Ten Commandments Warriors, co-sponsored the display, thanked Mountain City Mayor Kevin Parsons and the City Council for signing a proclamation honoring the fourth Saturday in August as "Ten Commandments Awareness Day." *Id.*  Mr. Teague also asked "'God [to] have mercy on the soul of any person who attempts to have these documents removed from the courthouse or any courthouse in America.'"  *Id.*

Other Displays Approved Under the Public-Forum Policy

47.     Pursuant to the public-forum policy, Defendant has permitted at least two other displays, in addition to the Second Ten Commandments Display, to be placed on the Courthouse walls: (1) a cabinet containing various historical artifacts, and (2) a framed Tennessee National Guard poster.

*The Historical Society Display*

48.     At the April 16, 2009, Commission meeting, County Commissioner Emily Millsaps inquired about placement of a historical display in the Courthouse.  The County Attorney and Mayor Grayson instructed her to submit a written proposal with a description of

12

the display, along with its dimensions and proposed placement, as required by the Policy. The Commission scheduled consideration of her proposal for the next meeting.

49. Acting as co-chairman of Courthouse history display for the Johnson County Historical Society, Commissioner Millsaps formally presented the display proposal on the Historical Society's behalf at the May 21, 2009, Commission meeting. The proposal contemplated display of a cabinet that would showcase various historical objects—including an old wall telephone, camera, apron and bonnet, tuning fork, shaving kit, cow bell, whiskey bottle, wash pan, assorted old clothes, and an 1872 Holy Bible—"to encourage the residents of Johnson County to support the Historical Society and its local history." (Ex. 8 at 2–4.) The proposal further indicated that the Historical Society intended to change the display frequently to exhibit new and different items. (*Id.* at 2.) According to the meeting minutes, the Commission gave an "'unofficial' okay" to the Historical Society's proposal and postponed an official vote until a later meeting. (Ex. 10 at 1.)

50. At its meeting on October 15, 2009, the Commission unanimously approved the Historical Society cabinet display. The cabinet, located in the Courthouse lobby a few feet away from the Second Ten Commandments Display, currently contains, among other things, a shaving mug, a brush, a 1931 vinyl record of "Mountain City Blues," an apple peeler, and 1860 tie press, and 1862 fluting iron, an egg scale, a metal vessel with a handle and spout, a lantern, a picture of former Governor of Tennessee Ned McWherter, and an 1872 Holy Bible.

*The Tennessee National Guard Display*

51. At the March 18, 2010, Commission meeting, Linda Moon, chairwoman of the Johnson County Republican Party, requested permission to display in the Courthouse a poster of

13

a United States flag that had been given to the Republican Party Organization by the Tennessee National Guard.

52. On April 15, 2010, the Commission unanimously approved the display of the Tennessee National Guard poster in accordance with "the County's [P]olicy for placing items on display in the Courthouse." (Ex. 11 at 3.)

53. The Tennessee National Guard poster depicts a large U.S. flag, underneath which is the following text:

> I am an AMERICAN SOLDIER. I am WARRIOR and a member of a TEAM. I SERVE the people of the United States and live the Army Values. I will ALWAYS place the mission first. I will NEVER accept defeat. I will NEVER quit. I will NEVER leave a fallen comrade. I AM disciplined, physically and mentally tough, trained and proficient in my warrior tasks and drills. I always maintain my arms, my equipment and myself. I am an expert and I am a professional. I STAND READY to deploy, engage, and destroy the enemies of the United States of America in close combat. I am a Guardian of Freedom and the American way of life. I AM AN AMERICAN SOLDIER.

(Ex. 9.) Following this text is the dedication, "In Appreciation for Your Dedication and Support To The Men And Women Of The Army National Guard Who Serve To Defend Freedom." (*Id.*)

54. The poster appears in the hallway outside the County Court Clerk's office, where Defendant had placed the Ten Commandments plaque before it was removed in 2008. (*Id.*)

14

Other Items Displayed in the Courthouse Lobby

55.     In addition to the Second Ten Commandments Display, the cabinet of historical objects, and the Tennessee National Guard poster, three other items also appear in the Courthouse lobby: a framed quilt and two framed pictures of wildlife.

56.     The quilt is displayed in a glass and wood frame next to the Historical Society's cabinet and across from the Second Ten Commandments Display in the Courthouse lobby.  (Ex. 12.)  It features pictorial representations of the County's official symbols: Maple (County Tree), corn (County Crop), Day Lily (County Flower), and Golden Finch (County Bird).  (*Id.*)  A small plaque next to the quilt indicates that it was designed and made by Mrs. Ruth Hawkins and displayed by the Johnson County Farm Bureau Women in 2007.  (*Id.*)

57.     The two wildlife pictures hang in the Courthouse lobby, a short distance down a hallway but close to the Second Ten Commandments Display.  One picture contains prints of a raccoon and a bird, created by Michael Sloan, above a card with some text, a small picture of the Tennessee flag with the words "Agriculture" and "Commerce," both sides of a coin commemorating the state of Tennessee, and the Tennessee state seal.  (Ex. 13.)  The other framed display, by the same artist, includes a print of two bald eagles hovering over the U.S. Capitol.  (Ex. 14.)  Just below the print are two small cards reading "In God We Trust" and "We the People," which are flanked by a small picture of the U.S. flag and a seal of some kind. (*Id.*)  Below the cards are small reproductions of the Declaration of Independence and the Bill of Rights, with another seal between them.  (*Id.*)

15

Defendant Rejects Mr. Stewart's Proposed Display

58.     At the May 20, 2010, Commission meeting, Mr. Stewart submitted a written proposal, pursuant to and in compliance with Defendant's public-forum Policy, to display two framed posters, as well as pictorial depictions of the proposed displays.

*Mr. Stewart's Proposed Display*

59.     Mr. Stewart's proposal described the two posters, including their contents and dimensions, and proposed that they be placed on the walls of the Johnson County Courthouse lobby. The proposal indicated that each plaque would measure 44 inches wide and 28 5/8 inches tall. (Ex. 4 at 2–3.)

60.     The first poster, entitled "On the Legal Heritage of the Separation of Church and State," begins with the statement, "The Constitution of the United States prohibits government from favoring one religion or disparaging any other." (*Id.* at 4.) Below this statement are three quotations, from a 1989 U.S. Supreme Court case, the First Amendment to the U.S. Constitution, and the 18th-century U.S. Treaty with Tripoli. (*Id.*) Below these quotations is the statement, "The Founding Fathers recognized the wall separating church and state," followed by quotations from Thomas Jefferson, James Madison, and John Leland, who is identified as a Baptist minister and friend of Thomas Jefferson. (*Id.*) At the bottom are the words, "Presented by Ralph Stewart, patriot and thinking citizen of Johnson County." (*Id.*)

61.     The second poster is entitled, "The Ten Commandments Are Not the Foundation of American Law." (*Id.* at 5.) Beneath this heading, the poster states, "The primary source of American law is the common and statutory law of England, NOT the Bible and NOT Christianity." (*Id.*) The first subheading reads, "America's seminal documents do not even

16

mention the Bible, Christianity, or the Ten Commandments," and just below this subheading are quotations from the U.S. Constitution and the Declaration of Independence. (*Id.*) The next subheading reads, "Many of the Ten Commandments could not be enacted as laws because the Constitution prohibits government from compelling religious belief or action." (*Id.*) Below these words appears the text of the first four of the Ten Commandments, followed by quotations from two U.S. Supreme Court cases. (*Id.*) Further down, the poster states that "[t]he other Commandments—such as 'thou shalt not kill' and 'thou shalt not steal'—are found in virtually every culture, including non-Judeo-Christian ones." (*Id.*) At the bottom are the words, "Presented by Ralph Stewart, patriot and thinking citizen of Johnson County." (*Id.*)

### The County's Decision

62. The Commission took no action on Mr. Stewart's proposal at the close of its meeting on May 20, 2010.

63. Following the meeting, and in response to Mr. Stewart's proposal, Mr. Teague of the Ten Commandments Warriors vowed to "'rally the troops once again to defend our majority rights.'" Jonathan Pleasant, *Commissioners Say No To State Building Codes in County; Ten Commandments Issue Raised Again*, The Tomahawk (Mountain City, Tenn.), May 26, 2010, http://www.thetomahawk.com/PrintStory.php?ID=58510.

64. The Commission subsequently forwarded Mr. Stewart's proposal to the Alliance Defense Fund ("ADF"), an advocacy organization of "Christ-centered attorneys" that "provides the resources that will keep the door open for the spread of the Gospel through the legal defense

17

of religious freedom . . . ."[2]   On June 3, 2010, ADF sent a letter to Mayor Grayson, advising the

Commission to reject Mr. Stewart's proposed display: "[T]he forum is only available for

replicas or reproductions of historical documents, not hand-made posters setting out political

views like that proposed by Mr. Stewart.  The forum is for historical documents that relate to

[the] history and heritage of American law in Johnson County, and is not dedicated for dueling

op-ed pieces.  This prohibition would be true of any political position, not just those proposed

by Mr. Stewart."  (Ex. 15.)

65.     Although the letter states that Mr. Stewart's proposed posters do not contain

"historical documents," the letter does not mention that Mr. Stewart's posters quote from the

same kinds of historical sources as does the Second Ten Commandments Display: the U.S.

Constitution, the Declaration of Independence, U.S. Supreme Court cases, and other legal

sources dating back to the 18th century.  Nor does the letter identify the basis for its assertion

that "[t]he forum is only available for replicas or reproductions of historical documents"—a

requirement not articulated in the Policy itself, and belied by the presence of other displays, such

as the Tennessee National Guard Display, that do not contain even quotations from historical

sources, let alone "replicas or reproductions" thereof.

66.     The letter also does not explain its assertion, belied by many of the statements

within the Second Ten Commandments Display, that displays may not present historical sources

that set forth "political views."  Likewise, the letter fails to elaborate on the purported difference

---

[2]   Alliance Defense Fund, About ADF, http://www.alliancedefensefund.org/About (last visited
Jan. 11, 2010).  Although Defendant initially refused to release the ADF letter on the ground
that it contained communications protected by the attorney-client privilege, Defendant ultimately
provided Mr. Stewart with a copy of the letter in response to a public-records request.

18

between (1) impermissible expression of "political views," and (2) statements made pursuant to the Policy's requirement that displays include statements about "the universally-valued principle of equal justice under the law."

67.     At the June 17, 2010, Commission meeting, Mayor Grayson informed the Commission that he had contacted a law firm for advice as to whether Mr. Stewart's request should be granted, and that the law firm had suggested rejecting the request because the proposed display did not meet the requirements of the public forum.   Mayor Grayson stated, "'Per county standards, I feel Mr. Stewart's documents do not fit the public forum requirements, since they are not historical documents.   In my opinion, we need to reject this request.'"   (Ex. 16. at 1.)   The Commission voted unanimously to deny Mr. Stewart's request.

68.     At the same meeting, following the vote to deny Mr. Stewart's request, Mike Tavalario, a member of the Johnson County Planning Commission, stated:

> I am proud the county commission stood up on this issue and nipped it in the bud.   This is a good Christian community that welcomes people who move here.   But if you want to attack God, you should leave.   I would like to volunteer to chair a committee to raise legal funds for the lawsuit I'm sure will come.

(*Id.*) He added, "I am proud to stand up for God's Ten Commandments because his son died on the cross for my sins and I am proud to be a Christian."   Jonathan Pleasant, *Commission Says No to Courthouse Displays*, The Tomahawk (Mountain City, Tenn.), June 23, 2010, at A-1, A-6.

### Claims for Relief

#### Federal Free Speech Clause

69.     Paragraphs 1 through 68 are incorporated as if fully set forth here.

19

70.     The Free Speech Clause of the First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  Under the Fourteenth Amendment's Due Process Clause, the Free Speech Clause applies with full force and effect to the acts of local officials.

71.     The County's decision to allow the posting of the Second Ten Commandments Display, the Johnson County Historical Society Display, and the Tennessee National Guard poster—while disallowing Plaintiff's proposed display—constitutes impermissible content-based and viewpoint-based discrimination under the First Amendment.

72.     The application of Defendant's public-forum Policy to authorize the Second Ten Commandments Display, the Johnson County Historical Society Display, and the Tennessee National Guard poster, but to disallow Plaintiff's proposed display, likewise reflects impermissible content-based and viewpoint-based discrimination.

73.     Insofar as Defendant's public-forum Policy is deemed to permit the exclusion of Plaintiff's display, the Policy is unreasonable, unconstitutionally vague, and an unlawful prior restraint on speech.

74.     By violating the Free Speech Clause as set forth above, Johnson County has, acting under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or threatened to deprive Plaintiff of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, entitling him to a remedy under 42 U.S.C. § 1983.

75.     In addition or in the alternative, by virtue of Johnson County's violations of the Free Speech Clause, Plaintiff is entitled to a remedy directly under the U.S. Constitution.

## Federal Establishment Clause

76.     Paragraphs 1 through 75 are incorporated as if fully set forth here.

77.     The Establishment Clause of the First Amendment to the U.S. Constitution

provides that "Congress shall make no law respecting an establishment of religion." Under the

Fourteenth Amendment's Due Process Clause, the Establishment Clause applies with full force

and effect to the acts of local officials.

78.     Johnson County's decision to exclude Mr. Stewart's posters from the public

forum, while permitting the posting of the Second Ten Commandments display, was undertaken

with a religious purpose, has a predominantly religious effect, endorses religion, and prefers

religion over non-religion, in violation of the Establishment Clause.

79.     Alternatively, if deemed to constitute the government's own speech, the Second

Ten Commandments display was erected with a religious purpose, has a predominantly religious

effect, endorses religion, and entails excessive entanglement between religion and government in

violation of the Establishment Clause.

80.     By violating the Establishment Clause as set forth above, Johnson County has,

acting under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or

threatened to deprive Plaintiff of rights secured by the First and Fourteenth Amendments to the

U.S. Constitution, entitling him to a remedy under 42 U.S.C. § 1983.

81.     In addition or in the alternative, by virtue of Johnson County's violations of the

Establishment Clause, Plaintiff is entitled to a remedy directly under the U.S. Constitution.

### Article I, § 3 of the Tennessee Constitution

82.     Paragraphs 1 through 81 are incorporated as if fully set forth here.

21

83.     Article I, § 3 of the Tennessee Constitution provides "that no preference shall ever be given, by law, to any religious establishment or mode of worship."

84.     By exhibiting the Second Ten Commandments display, while excluding Mr. Stewart's posters, Johnson County has shown a governmental preference for Christianity in violation of Art. I, § 3.

## Prayer for Relief

85.     Paragraphs 1 through 84 are incorporated as if fully set forth here.

### Injunction

86.     Plaintiff has no adequate remedy at law.   He therefore respectfully requests a permanent injunction ordering Defendant to accept his posters for display in the Courthouse in a location that is as prominent as the location of the Second Ten Commandments display.

87.     In the alternative, Plaintiff requests a permanent injunction ordering Defendant to close the public forum in the Courthouse and to remove all items, including the Second Ten Commandments display, that have been erected under Defendant's public-forum Policy.

### Declaratory Judgment

88.     Plaintiff requests a declaratory judgment that Defendant's exclusion of Mr. Stewart's posters violates the Free Speech and Establishment Clauses of the First Amendment to the U.S. Constitution and Article I, § 3 of the Tennessee Constitution.   Alternatively, Plaintiff requests a declaratory judgment that the presence of the Second Ten Commandments display violates the federal Establishment Clause and Article I, § 3 of the Tennessee Constitution, and that Defendant's public-forum Policy is unconstitutionally vague and unreasonable and an unlawful prior restraint on speech, in violation of the Free Speech Clause.

22

## Nominal Damages

89.     Plaintiff requests nominal damages of one dollar for past violations of his

constitutional rights.

## Attorneys' Fees

90.     Plaintiff requests an order awarding him the costs of this action, including

attorneys' fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 2412.

## Other Relief

91.     Plaintiff requests any other relief that the Court deems just and proper.


Respectfully submitted,


_____

D. Bruce Shine
BPR #: 000815
OFFICE OF D. BRUCE SHINE
433 East Center Street, Suite 201
Kingsport, TN 37660
(423) 246-8433 (phone)
(423) 246-7464 (fax)
bruceshine@chartertn.net


*Counsel for Plaintiff*

Of Counsel:
Ayesha N. Khan
(*pro hac vice* motion pending)
Gregory M. Lipper
(*pro hac vice* motion pending)
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
518 C Street, NE
Washington, DC 20002
(202) 466-3234 (phone)
(202) 466-2587 (fax)
khan@au.org; lipper@au.org


January 13, 2011


23